UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT SIMPSON, JR.,

                              Plaintiff,

        -v-                                              CIVIL ACTION NO. 22 Civ. 10606 (SLC)

COMMISSIONER OF SOCIAL SECURITY OF THE                   **OPINION AND ORDER**
UNITED STATES,

                              Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff Robert Simpson, Jr. ("Mr. Simpson") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") under the Act.  (ECF No. 1 (the "Complaint")).  Mr. Simpson contends that the decision of the Administrative Law Judge dated October 3, 2022 (the "ALJ Decision") was erroneous, not supported by substantial evidence, and contrary to law, and asks the Court to reverse the Commissioner's decision and award benefits or, in the alternative, remand for a new hearing to reconsider the evidence.  (Id. at 2).

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On March 16, 2023, Mr. Simpson filed his motion (ECF No. 16 ("Mr. Simpson's Motion")), and on May 15, 2023 the Commissioner cross-moved (ECF No. 20

(the "Commissioner's Motion")).   For the reasons set forth below, Mr. Simpson's Motion is

DENIED and the Commissioner's Motion is GRANTED.

## II.      BACKGROUND

### A.   Medical Evidence

Mr. Simpson has provided a detailed summary of the medical evidence and underlying

proceedings (ECF No. 16-1 at 4–14), which the Commissioner adopts as supplemented by

additional facts set forth in the Commissioner's Motion.  (ECF No. 21 at 6–10).  Accordingly, the

Court adopts the parties' summaries of the medical evidence as accurate and complete for

purposes of reviewing the ALJ Decision and discusses below the medical evidence necessary for

that review.  (See § III.B, infra).

### B.   Administrative Proceedings

#### 1.   The ALJ Decision

In a decision dated June 25, 2020, ALJ Bruce S. Fein (the "ALJ") denied Mr. Simpson's

August 9, 2019 application for SSI (the "Application"), which the Appeals Council also declined to

review (R. 969–92 (the "2020 ALJ Decision")), and which Mr. Simpson challenged in the United

States District Court for the Northern District of New York.  (R. 993–94).[1]  On November 23, 2021,

the Honorable Christian F. Hummel approved the parties' stipulation to reverse the 2020 ALJ

Decision and remand the action under the fourth sentence of 42 U.S.C. § 405(g).  (R. 999–1001).

In an order dated May 19, 2022, pursuant to the parties' stipulation, the Appeals Council vacated

the 2020 ALJ Decision and remanded the case to the ALJ for a new hearing.  (R. 1002–08).

---

[1] Citations to "R." refer to the Administrative Record.  (ECF Nos. 11 – 11-4).

On remand, on September 15, 2022, the ALJ held a hearing at which Mr. Simpson and his counsel appeared, as well as independent medical expert Ronald Kendrick, M.D. ("Dr. Kendrick"), and vocational expert Ruth Baruch (the "VE").  (R. 948–68).  On October 3, 2022, the ALJ  issued the ALJ Decision again denying Mr. Simpson's Application.  (R. 926–40).  The ALJ first found that Mr. Simpson had not engaged in substantial gainful activity since August 9, 2019 (the "Application Date").  (R. 929).  The ALJ next found that Mr. Simpson had the following severe impairments: (i) lumbago with sciatica, (ii) osteoarthritis, (iii) post left knee arthroscopy, (iv) morbid obesity, (v) thoracic degenerative disc disease, (vi) bipolar disorder, (vii) post-traumatic stress disorder ("PTSD"), (viii) generalized anxiety disorder, (ix) attention-deficit hyperactivity disorder ("ADHD"), and (x) borderline personality disorder.  (R. 929).  The ALJ found, however, that Mr. Simpson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  (R. 929).  Specifically, the ALJ found that Mr. Simpson's (i) physical impairments did not meet Listings 1.15, 1.16, or 1.18, and (ii) his mental impairments did not meet Listings 12.04, 12.06, 12.08, 12.11, or 12.15.  (R. 929–32).

The ALJ then determined that Mr. Simpson had the residual functional capacity to:

perform light work, as defined in 20 C[.]F[.]R[. §] 416.967(b), except he cannot climb ropes, ladders, or scaffolds.  He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  [He] should avoid concentrated exposure to unprotected heights, hazardous machinery, extreme temperatures, and excessive vibration.  Mentally, [he] can perform simple, routine, repetitive tasks.  He can occasionally interact with coworkers, supervisors, and the public. He also requires a low stress job, which is defined as involving only occasional decision-making, changes in the work setting, and use of judgment required on the job.

(R. 932–33 (the "RFC")).  After noting that Mr. Simpson had no past relevant work, the ALJ found that, considering his age (40 on the Application Date, making him a younger individual), education, work experience, and RFC, there were jobs in significant numbers in the national economy that he could perform.  (R. 938–39).  Those jobs included (i) price marker (Dictionary of Occupational Titles ("DOT") code 209.587-034), of which there were 137,000 jobs in the national economy; (ii) electrical assembler (DOT code 729.687-010), of which there were 8,100 positions; and (iii) mail sorter (DOT code 209.687-026), of which there were 11,000 positions.  (R. 939).  Accordingly, the ALJ found that Mr. Simpson had not been under a disability as defined under the Act and was not entitled to SSI from the Application Date through the date of the ALJ Decision.  (R. 940).

The parties cite no evidence—and the Record contains none—suggesting that the Appeals Council assumed jurisdiction of the case following the ALJ Decision.  Accordingly, the ALJ Decision became the "final decision of the Commissioner."  20 C.F.R. § 416.1484(a).

### C.  Procedural History

On December 15, 2022, Mr. Simpson, through counsel, filed the Complaint commencing this action.  (ECF No. 1).  The parties thereafter consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 13).  On March 16, 2023, Mr. Simpson filed his Motion, on May 15, 2023, the Commissioner filed his Motion, and on May 23, 2023, Mr. Simpson filed a reply.  (ECF Nos. 16; 20–22).

### III.    DISCUSSION

#### A.  Applicable Legal Standards

##### 1.  Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).[2]  The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Tejada, 167 F.3d at 773  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Finn v. Comm'r of Soc. Sec., No. 21 Civ. 5457 (SLC), 2022 WL 4245196, at *3 (S.D.N.Y. Sept. 15, 2022).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  The substantial evidence test applies not only to the factual

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).   In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Thomas v. Comm'r of Soc. Sec. Admin., 479 F. Supp. 3d 66, 82 (S.D.N.Y. Aug. 18, 2020) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. § 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Rosario v. Comm'r of Soc. Sec., No. 20 Civ. 7749 (SLC), 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. § 416.920b.

The Act authorizes a court, when reviewing the Commissioner's decisions, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004), amended in part on other grounds, 416 F.3d 101 (2d Cir. 2005).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.   Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2.  Standards for Benefit Eligibility

For purposes of SSI benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider  "(1) objective medical facts; (2) diagnoses or medical

opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorrilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. **Medical Opinion Evidence**

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant. See 20 C.F.R. § 416.927; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004) (summary order). Under this "[T]reating [P]hysician [R]ule," an ALJ was required to "give good reasons" Kevin E. v. Comm'r of Soc. Sec., No. 19 Civ. 593 (EAW), 2021 WL 1100362, at *3–4 (W.D.N.Y. Mar. 23, 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000); see 20 C.F.R. § 416.927(c)(2). In addition, under the Treating Physician Rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). These new regulations reflect a move away from a perceived hierarchy of medical sources. See id. The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[3] 20 C.F.R.

---

[3] The new regulations define "prior administrative medical finding" as:

> [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological

§ 416.920c(a).  See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y.

Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and "evaluate

the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency,

(3) relationship of the source with the claimant, (4) the medical source's specialization, and

(5) any "other" factor that "tend[s] to support or contradict a medical opinion[.]"  20 C.F.R.

§§ 416.920c(c)(1)–(5).

   The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 416.920c(a).

Under the new regulations, the ALJ must "explain[,]" in all cases, "how [he or she] considered"

both the supportability and consistency factors, as they are "the most important factors[.]"  Id.

§ 416.920c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency

as "the most important" of the five factors).  As to supportability, "the strength of a medical

opinion increases as the relevance of the objective medical evidence and explanations presented

by the medical source increase."  Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at

*6 (S.D.N.Y. Jan. 29, 2021) ("Vellone I") (citing 20 C.F.R. § 404.1520c(c)(1)), adopted by, 2021 WL

2801138 (S.D.N.Y. July 6, 2021) ("Vellone II"); see 20 C.F.R. § 416.920c(c)(1).  Consistency "is an

all-encompassing inquiry focused on how well a medical source is supported, or not supported,

---

consultants at a prior level of review (see § 416.1400) in your current claim based on their
review of the evidence in your case record, such as: (i) The existence and severity of your
impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about
whether your impairment(s) meets or medically equals any listing in the Listing of
Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about
whether your impairment(s) functionally equals the listings in Part 404, Subpart P,
Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the
duration requirement; and (vii) How failure to follow prescribed treatment (see
§ 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.
20 C.F.R. § 416.913(a)(5).

by the entire record."  Vellone I, 2021 WL 319354, at *6; see 42 U.S.C. § 423(f) (requiring ALJ to base decision on "all the evidence available in the" record).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider them in determining the persuasiveness of the opinion of a medical source but need not explicitly discuss them.  20 C.F.R. § 416.920c(b)(2).  If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors. See id. § 416.920c(b)(3).

### 4. Assessing Claimant's Subjective Allegations

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s)" SSR 16-3p, 2017 WL 5180304, at *3—i.e., "an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques" 20 C.F.R. § 416.921—"that could reasonably be expected to produce an individual  symptoms."  SSR 16-3p, 2017 WL 5180304, at *3; see 20 C.F.R. § 416.929(c).  If such an impairment is found, the ALJ must next evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations."  20 C.F.R. § 416.929(c)(1). To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370

F. App'x 179, 183–84 (2d Cir. 2010) (summary order); <u>Taylor v. Barnhart</u>, 83 F. App'x 347, 350–51 (2d Cir. 2003) (summary order).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." <u>Sanchez v. Astrue</u>, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Nov. 17, 2009), <u>adopted</u> <u>by</u>, 2010 WL 101501 (S.D.N.Y. Jan. 12, 2010).   "First, the ALJ must decide whether objective evidence, on its own, substantiates the <u>extent</u> of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." <u>Id.</u>  "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 416.929(c)(3)]." <u>Id.</u> (citing <u>Gittens v. Astrue</u>, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).   If the ALJ does not follow these steps, remand is appropriate. <u>Id.</u> at *15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  SSR 16-3p, 2017 WL 5180304, at *7–8.  These seven factors include (1) an individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve

pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Id.; see Bush, 94 F.3d at 46 n.4.

### B.  Evaluation of the ALJ's Decision

Mr. Simpson's arguments in support of his request for reversal of the ALJ Decision fall into two categories: (1) the ALJ erred in evaluating the medical opinion evidence and prior administrative medical findings, and (2) the ALJ erred in assessing Mr. Simpson's RFC. (ECF No. 16-1 at 14–31).  The Court analyzes each of Mr. Simpson's arguments in turn.[4]

### 1.  Evaluation of Medical Opinion Evidence and Prior Administrative Medical Findings

Mr. Simpson contends that the ALJ failed to properly analyze the opinions of therapist Cynthia Flores, LMSW ("Ms. Flores"); consultative psychologist Amanda Slowik, Psy.D. ("Dr. Slowik"); and psychiatric nurse Hugh McKenzie ("Mr. McKenzie"), and omitted any analysis of the opinion of treating physician Linden Schild, M.D. ("Dr. Schild").  (ECF No. 16-1 at 22–25). The Commissioner responds that the ALJ properly evaluated the opinions of Ms. Flores, Dr. Slowik, and Mr. McKenzie under the new regulations and did not err in omitting the 2015 opinion of Dr. Schild.  (ECF No. 21 at 16–23).  The Court summarizes the opinions of Ms. Flores, Mr. McKenzie, Dr. Slowik, and Dr. Schild before turning to Mr. Simpson's arguments.[5]

---

[4] Although Mr. Simpson had alleged disability due to physical impairments to his back and knee (R. 199, 214, 933), in his Motion, he "take[s] no issue" with the ALJ's finding that he could physically perform light work and only challenges the ALJ's failure to recognize that he might "'miss a day or so'" due to his physical impairments.  (ECF No. 16-1 at 9 (citing R. 932 and quoting R. 960)).  The Court addresses his arguments concerning time-off and absenteeism in § III.B.2.a, infra, and deems Mr. Simpson to have waived any other challenges to the ALJ's RFC as to his physical limitations.  See Poupore, 566 F.3d at 306 (treating as waived argument that claimant did not raise in briefing).

[5] As the Commissioner correctly notes (ECF No. 21 at 16 n.5), Mr. Simpson does not challenge the ALJ's analysis of the opinions of psychiatrist Tara Belsare, M.D. ("Dr. Belsare"), who treated Mr. Simpson in individual sessions and group therapy at the Addiction Center of Broome County.  (R. 817–52).

### a.  **Ms. Flores and Mr. McKenzie**

Ms. Flores was one of Mr. Simpson's treating providers at Cornerstone Health from 2021 until 2022.  (R. 1363–1479).  On June 21, 2022, Ms. Flores completed a psychiatric assessment for Mr. Simpson, listing his diagnoses as opiate use-severe, cannabis use-severe, PTSD, general anxiety disorder, bipolar disorder, agoraphobia, ADHD, borderline personality disorder, and major depression.  (R. 1523).  She noted that Mr. Simpson had not been hospitalized for his psychiatric conditions.  (R. 1523–24).  She described that his treatment regimen at that time, which consisted of medication[6] and bi-weekly psychotherapy sessions, "help[ed] alleviate and manage his symptoms" and rendered him "stable[,]" but noted that his "social and occupational functioning remain[ed] impaired with minimal progress made."  (R. 1523).  She assessed that he had no limitations in maintaining basic personal hygiene and grooming; was moderately limited in understanding and remembering both simple and complex instructions and in performing low-stress, simple tasks; and was very limited in maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate behavior, and using public transportation.  (R. 1524).  She recommended that he refrain from working due to his mental impairments, which included "problems with authority and emotional disturbance."  (R. 1524).

On August 12, 2022, Ms. Flores completed a three-page questionnaire in which she assessed that Mr. Simpson had moderate limitations in the areas of maintaining attention and concentration and getting along with co-workers; marked limitations in maintaining regular

---

Mr. Simpson has therefore waived any potential challenge to this aspect of the ALJ Decision.  See Poupore, 566 F.3d at 306.

[6] At the time, Mr. Simpson was "compliant" with his prescriptions for Cyclobenzaprine, Eliquis, Gabapentin, Klonopin, Melatonin, Seroquel, and Wellbutrin.  (R. 1523).

attendance, performing activities within a schedule, and interacting appropriately with the public; and extreme limitations in accepting instructions, responding appropriately to criticism from supervisors, and responding appropriately to ordinary stressors in a work setting with simple tasks. (R. 1497–99 (the "August 2022 Questionnaire")). Ms. Flores assessed that Mr. Simpson would be off-task more than one-third of the day and absent three or more days per month. (R. 1498). She listed his diagnoses as bipolar disorder, agoraphobia, PTSD, ADHD, borderline personality disorder, and opioid dependence (in remission). (R. 1498). She described that he had "problems with authority, emotional disturbances, PTSD due to adverse childhood experiences and past trauma in adulthood[,] . . . [and] difficulty with interpersonal relationships [that] affect[s] his social and occupational functioning." (R. 1498). Ms. Flores noted that his medications[7] and therapy "have alleviated his symptoms but [he] continue[d] having difficulty managing" and "ha[d] difficulty leaving his home due to extreme fear [of] interacting with others." (R. 1498).

In a similar questionnaire dated August 8, 2022, Mr. McKenzie, also at Cornerstone Health, provided assessments identical to Ms. Flores' assessments in the August 2022 Questionnaire. (R. 1518–20; see ECF No. 21 at 10 (noting that Mr. McKenzie's responses were "identical to Ms. Flores's.")).

### b. Dr. Slowik

On October 23, 2019, Dr. Slowik performed a psychiatric evaluation of Mr. Simpson. (R. 812–16). She noted the absence of psychiatric hospitalizations, and that he was currently

---

[7] At this time, Mr. Simpson was prescribed Adderall, Cyclobenzaprine, Eliquis, Gabapentin, Klonopin, Melatonin, Seroquel, and Wellbutrin. (R. 1498).

receiving psychiatric treatment, including medications. (R. 812). His current functioning included difficulty sleeping "due to intrusive thoughts, bad dreams, and pain[;]" a "history of affective instability[;]" fear of abandonment; low self-esteem; irritability; symptoms of PTSD; and problems with concentration, learning, organization, and planning. (R. 812–13). He informed her of a childhood trauma, which, Dr. Slowik noted, he had not mentioned during a 2012 evaluation, and reported problems with concentration, learning, organization, and planning. (R. 812). Since completing a three-year prison sentence for criminal sale of a controlled substance in 2016, Mr. Simpson had been serving two years of parole and attended weekly parole meetings. (R. 813). He reported being able to dress, bathe, and groom himself; prepare food; shop for groceries; manage his own money; and use public transportation, because he does not drive. (R. 814; see R. 45 (Mr. Simpson testifying that he does not have a driver's license)). He reported having a "few friends" but a family who is "not particularly supportive." (R. 814). His reported hobbies included watching television, coloring, reading, and listening to music. (R. 814).

Dr. Slowik performed a mental status examination, during which Mr. Simpson was "cooperative" and exhibited "adequate" social skills. (R. 813). He appeared well-groomed and appropriately dressed, but restless and bounced his lower leg during the evaluation. (R. 813). His speech was intelligent and clear with adequate expressive language, but his receptive language skills "were questionable as he asked for clarification for simple questions." (R. 813). Mr. Simpson's thought process was coherent and goal-directed, without evidence of hallucinations, delusions, or paranoia. (R. 813–14). He exhibited the full range of affect, which was appropriate to speech and thought content, appeared euthymic and anxious, and oriented as to person and place. (R. 814). Dr. Slowik observed that his attention and concentration were

mildly impaired due to pain and anxiety, and his remote and memory skills were mildly impaired. (R. 814).  His intellectual functioning was "at the high end of the below-average range[,]" his insight limited to fair, and his judgment questionable.  (R. 814).

Dr. Slowik opined that Mr. Simpson had no limitations to his ability to maintain personal hygiene; mild limitations to his ability to understand, remember, and apply simple directions and instructions; moderate limitations to his ability to understand, remember, or apply complex directions and instructions; and moderate to marked limitations to his ability to interact adequately with supervisors, coworkers, and the public, sustain an ordinary routine, and regulate his emotions.  (R. 815).  She found that his difficulties were "caused by distractibility and anxiety[,]" and that his psychiatric problems "may significantly interfere with [his] ability to function on a daily basis."  (R. 815).

Dr. Slowik recommended individual therapy with an emphasis on dialectical behavioral therapy ("DBT") skills to "reduce his affective instability and interpersonal problems."  (R. 815).[8] She assessed his prognosis as guarded and anticipated his impairment would last for more than two years.  (R. 815).

### c.  Dr. Schild

Mr. Simpson cites the treatment notes of Dr. Schild at Psychiatric Services of Orange and Sullivan Counties, where Mr. Simpson received treatment from January 2013 until December 2016.  (ECF No. 16-1 at 22 (citing R. 303); see R. 274–340).  Dr. Schild did not complete any

---

[8] DBT "is a type of cognitive behavioral therapy" that teaches patients "how to identify negative thinking patterns and change them" while simultaneously helping them to "accept that all [their] thoughts are valid because of who [they] are and the life experiences that [they have] had."  See Stephanie Booth & Zilpah Sheikh, MD, Dialectical Behavioral Therapy (DBT), WebMD, (Feb. 28, 2024) https://www.webmd.com/mental-health/dialectical-behavioral-therapy.

medical opinion questionnaire or provide a report, but in treatment notes dated March 23, 2015, stated that Mr. Simpson "clearly isn't able to maintain any kind of gainful employment" and "is unable to tolerate being around people, due to extreme anxiety." (R. 303). Dr. Schild also noted that Mr. Simpson was "[t]olerating" his medications "well" without "side effects[;]" appeared neatly dressed and groomed, calm, cooperative, appropriate and organized; and spoke with "[f]luent speech" but gave "brief and somewhat concrete" answers. (R. 303). Dr. Schild increased Mr. Simpson's prescription for Seroquel and added a prescription for Xanax—in addition to ongoing prescriptions for Adderall, Ambien, Ablify, and Quetiapine Fumarate—noted that Mr. Simpson was not currently in therapy, and recommended follow-up in one to two months. (R. 303–04).

Treatment records from subsequent visits to Dr. Schild show a general continuation of the medication regimen (see R. 283–302), which rendered Mr. Simpson's panic attacks "more tolerable" (R. 289) and helped him manage his anger. (R. 285).

#### d.  Additional medical opinions in the record

On November 1, 2019, state agency psychological consultant M. Juriga, Ph.D. ("Dr. Juriga") assessed that Mr. Simpson had moderate limitations in understanding, remembering and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing himself, and that he could perform unskilled work provided that close contact was limited. (R. 62, 66–68). On December 5, 2019, state agency psychological consultant S. Bhutwala, Ph. D. ("Dr. Bhutwala"), adopted Dr. Juriga's findings and noted that Mr. Simpson's ability to perform "unskilled work, not closely with others," was unchanged. (R. 84–85).

During 2019 and early 2020, Mr. Simpson received treatment, including individual and group therapy, at the Addiction Center of Broome County primarily under the care of Tara Belsare, M.D. ("Dr. Belsare").  (R. 817–52).  On April 14, 2020, Dr. Belsare completed the same questionnaire as Ms. Flores and Mr. McKenzie, in which she noted that Mr. Simpson had marked limitations in maintaining regular attendance and performing activities within a schedule, and extreme limitations in his ability to respond appropriately to ordinary stressors in a work setting with simple tasks.  (R. 914–15).  She estimated that he would be off-task 16–20% of the workday, and absent three or more times per month.  (R. 914–15).  Apart from listing his diagnoses—PTSD, generalized anxiety, panic disorder, major depression with psychotic features, borderline personality disorder, and ADHD—she did not include a narrative of his symptoms, treatment, or prognosis.  (R. 914–15).

During 2019 through 2021, Mr. Simpson received primary care from Scott Rosman, N.P. ("Mr. Rosman"), at United Health Services.  (R. 854–71, 1303–48).  In a form dated June 2, 2020, Mr. Rosman described Mr. Simpson's physical conditions as hypertension and knee pain and estimated that he would be off-task 15–20% of the workday and absent two days per month. (R. 917–18).  Mr. Rosman assessed that Mr. Simpson had the physical abilities to sit for eight hours per day, stand or walk for four hours per day, and could safely lift more than ten pounds frequently during the day.  (R. 918).  Aside from listing Mr. Simpson's medications, Mr. Rosman did not include a narrative of his symptoms, treatment, or prognosis.  (R. 918).  On the same date, Mr. Rosman completed the same questionnaire as Dr. Belsare, Ms. Flores, and Mr. McKenzie, in which he noted that Mr. Simpson had no or mild limitations to maintaining regular attendance and performing activities within a schedule, moderate limitations to his ability to respond

appropriately to ordinary stressors in a work setting with simple tasks, and would be off-task 16–20% of the day and absent two days per month. (R. 920–21).

In a psychiatric assessment for determination of employability dated September 1, 2021, the provider[9] assessed that Mr. Simpson had no limitations in maintaining personal hygiene; moderate limitations in understanding and remembering simple instructions, understanding and remembering complex instructions, interacting appropriately with others, and performing low-stress, simple tasks; and extreme limitations in maintaining attention and concentration, maintaining socially-appropriate behavior, and using public transportation. (R. 1526).

Finally, at the hearing on September 15, 2022, the ALJ heard testimony from Dr. Kendrick, an orthopedic surgeon. (R. 952–61). Dr. Kendrick opined based on his review of the medical records that, despite back and knee conditions and obesity, Mr. Simpson was capable of light work, with the additional conditions that he (i) be limited to "occasional" postural activities, (ii) be restricted from working around dangerous moving machinery and other workplace hazards, (iii) refrain from use of large vibrating equipment (e.g., jackhammers), and (iv) be limited to environments above freezing and below 95 degrees. (R. 955–56). In response to a question from Mr. Simpson's attorney, Dr. Kendrick stated that Mr. Simpson "might miss a day or so" of work due to his physical impairments. (R. 960).

#### e. **Analysis**

Mr. Simpson argues that the ALJ failed to explain adequately the persuasiveness, supportability, and consistency of Dr. Slowik's opinion, and disputes the ALJ's assessment of the persuasiveness of the opinions of Ms. Flores and Mr. McKenzie. (ECF No. 16-1 at 23–25).

---

[9] The signature of the provider is not legible. (R. 1526).

In addition, Mr. Simpson asserts that the ALJ erred in not considering Dr. Schild's "opinion" that Mr. Simpson "clearly isn't able to maintain any kind of gainful employment[.]"  (Id. at 22–23). The Court finds that none of Mr. Simpson's arguments has merit.

### i.   Dr. Slowik

In the ALJ Decision, the ALJ explained that he was "generally more persuaded by the mental assessments from" Mr. Rosman, Dr. Juriga, and Dr. Bhutwala.  (R. 937).  The ALJ noted that these assessments were both consistent with one another as well as with Mr. Simpson's mental status examinations and reported activities described by Dr. Slowik.  (R. 937).  The ALJ pointed to Dr. Slowik's observations that, despite appearing "restless" and asking for "clarification for simple questions[,]" Mr. Simpson was "cooperative[,]" had adequate social skills, made appropriate eye contact, demonstrated adequate expressive language skills, had intellectual functioning "at the high end of the below-average range," had "full range and appropriate" affect, coherent thought processes, and only "mildly" impaired attention, concentration, and memory skills.  (R. 937 (quoting R. 812–16)).  The ALJ also found Dr. Slowik's assessment of Mr. Simpson's insight as "limited to fair" and judgment as "questionable" to be inconsistent with other medical sources finding his insight and judgment "normal" or "good" and his behavior pleasant, cooperative, and appropriate, (R. 937 (citing, inter alia, R. 817–902, 910–12, 1350–54, 1362–1421, 1501–16)), and with therapy records showing that "he has been able to identify and deal with different stressors and effectively use various coping skills."  (R. 937 (citing R. 1422–82)).  In addition, the ALJ noted that Dr. Slowik's assessments were inconsistent with Mr. Simpson's reported daily activities, which included self-care, attending and succeeding at full-time online college courses, spending time with family, managing his own money, and

eating out at restaurants.  (R. 937 (citing R.  212–21, 808–16, 1372, 1378, 1381, 1384, 1387, 1389, 1395)).  Finally, the ALJ acknowledged that Mr. Simpson's subjective description of his symptoms was consistent with Dr. Slowik's opinion of mild to marked impairments, but he ultimately found that Mr. Simpson was not as disabled as he alleged given the mental status examinations and reported activities.  (R. 930, 937).

Mr. Simpson's argument concerning the ALJ's analysis of Dr. Slowik's opinions appears to rest on the premise that the ALJ was required to state specifically the degrees of persuasiveness, consistency, and supportability he attributed to her opinions.  The Second Circuit has explained, however, that an ALJ is not required to use "magic words" but rather "explain how [he] considered the supportability and consistency factors" in evaluating the persuasiveness of the medical opinion.  Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (summary order); see Nieves v. Comm'r of Soc. Sec., No. 23 Civ. 5 (JGLC) (BCM), 2024 WL 992197, at *17 (S.D.N.Y. Feb. 20, 2024) ("While no 'magic words' are required, the ALJ's discussion must make it clear how [he] considered both factors."), adopted by, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024); Dustin P. v. Comm'r of Soc. Sec., No. 23 Civ. 455 (JLS), 2023 WL 8189976, at *5 (W.D.N.Y. Nov. 27, 2023) ("The relevant inquiry is whether a reviewing court can fathom the ALJ's reasoning in relation to the record evidence as a whole.") (citing McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014)).  While the ALJ here did not use the words "persuasive," "supportability," or "consistency" in the same sentence as Dr. Slowik's opinion, he did state that he was "more persuaded by the medical assessments from" Mr. Rosman, Dr. Juriga, and Dr. Bhutwala, and then proceeded to discuss Dr. Slowik's opinion in comparison to the treatment records, other medical opinions, and Mr. Simpson's reported activities.  (R. 937).  The ALJ's statement that he was "more

persuaded" by the other providers' opinions, which he found "more consistent with [Mr. Simpson's] mental status exams and reported activities" (R. 937), necessarily demonstrates that he found Dr. Slowik's opinion <u>less</u> persuasive, <u>less</u> consistent, and <u>less</u> supportable by the record.  The ALJ's evaluation of Dr. Slowik's opinions in relation to the other medical opinions and record evidence is indeed consistent with the rule in this Circuit "that an ALJ should not consider the persuasiveness of each medical opinion 'in a vacuum,' but must adequately account for the consistency of the various opinions with each other."  <u>Jennifer G. v. Comm'r of Soc. Sec.</u>, No. 22 Civ. 996 (MAD) (ML), 2023 WL 8435991, at *8 (N.D.N.Y. Sept. 6, 2023), <u>adopted by</u>, 2023 WL 7277260 (N.D.N.Y. Nov. 3, 2023) (quoting <u>Mallorie M. v. Comm'r of Soc. Sec.</u>, No. 21 Civ. 891 (MAD) (ATB), 2022 WL 19078137, at *12 (N.D.N.Y. Dec. 22, 2022) (collecting cases), <u>adopted by</u>, 2023 WL 2563209 (N.D.N.Y. Mar. 17, 2023)).

Further, the Court can infer from the ALJ's contrasting Dr. Slowik's assessment of Mr. Simpson's insight as limited to fair and judgment as questionable with the "other medical sources [that] described [Mr. Simpson's] insight and judgment as 'normal' or 'good,'" (R. 937 (citing R. 817–902, 910–12, 1304–49, 1362–1421)), as signifying the ALJ's conclusion that Dr. Slowik's findings were less consistent and less supportable by the record evidence.  Because the Court can "glean" the ALJ's evaluation of the supportability and consistency of Dr. Slowik's opinion from his analysis of the psychological evaluations in the record, "the Court concludes that the substance of [20 C.F.R. § 416.920c] was not traversed" and any procedural error in omitting an express reference to supportability or consistency in relation to Dr. Slowik's opinion is harmless. <u>Scott A. C. v. Kijakazi</u>, No. 20 Civ. 1530 (BKS) (DEP), 2022 WL 2965585, at *3 (N.D.N.Y. July 27, 2022) (finding ALJ's failure to mention supportability expressly was harmless error where

"searching review of the record" showed that ALJ did in fact consider supportability); see Ricky L. v. Comm'r Soc. Sec., No. 20 Civ 7102 (FPG), 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) (finding ALJ's "procedural error" in failing to mention supportability and consistency of consultative examiners' opinions harmless where it was "clear" from decision that ALJ considered those factors "in the context of the other opinion evidence and the medical records and treatment notes"); see also Garland v. Ming Dai, 593 U.S. 357, 369 (2021) (explaining that "a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned'") (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

Finally, the cases on which Mr. Simpson relies do not compel a different conclusion.  (ECF No. 16-1 at 17–18, 22–23).  Unlike the ALJ in Loucks, who did not explain how they "considered the supportability and consistency of medical opinions in the record" including "the only [opinion] that the ALJ found persuasive" in determining the claimant's RFC, 2022 WL 2189293, at *2, as discussed above the ALJ here provided a lengthy discussion of why he found Dr. Slowik's opinion inconsistent with and not supported by the record and therefore less persuasive than the medical opinions of Dr. Juriga, Dr. Bhutwala, and Mr. Rosman.  Mr. Simpson's reliance on Rucker v. Kijakazi, where the court found that the ALJ erred by rejecting a medical opinion because it was "based solely on the claimant's reports[,]" 48 F.4th 86, 92 (2d Cir. 2022), is misplaced because here the ALJ cited extensive evidence—including other medical opinions, treatment records, and Mr. Simpson's reported activities of daily living—as grounds for finding Dr. Slowik's opinion less persuasive.  (R. 937).

Accordingly, the Court finds that, by "compar[ing] and consider[ing]" Dr. Slowik's opinions "in relation to the totality of the record[,]" the ALJ complied with 20 C.F.R. § 416.920c and provided a logical conclusion supported by substantial evidence despite not using the terms "persuasiveness," "supportability," and "consistency" in direct relation to Dr. Slowik's opinion. Dustin P., 2023 WL 8189976, at *5–6 (finding that ALJ did not err by failing to use word "supportability" when discussing persuasiveness of medical opinion "in relation to the totality of the record"); see also Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (rejecting argument that ALJ's failure to mention claimant's objection to VE testimony where ALJ's decision otherwise demonstrated that ALJ had considered and rejected that objection).

### ii.   Ms. Flores and Mr. McKenzie

The ALJ found the opinions of Ms. Flores and Mr. McKenzie "unpersuasive" because they were "supported by little, if any, explanation and are inconsistent with the other aforementioned medical opinions, mental status exams, and activities of daily living." (R. 937). This conclusion appears in the paragraph of the ALJ Decision immediately following the three paragraphs discussed above in which the ALJ discussed substantial portions of the record in assessing the persuasiveness of Dr. Slowik's opinion. (Id.)

Mr. Simpson disputes the ALJ's conclusion, arguing that Ms. Flores "provided the most comprehensive and useful explanation of record" and that her "opinions are quite consistent with those of other treating sources and the overall evidence [.]" (ECF No. 16-1 at 24). Similarly, Mr. Simpson contends that the ALJ's finding as to the supportability and consistency of the opinions of Ms. Flores as well as Mr. McKenzie "is flat out wrong," citing to portions of the

treatment records where they described Mr. Simpson's mental impairments.  (Id. at 24–25 (citing R. 1498, 1519–20, 1524)).  Thus, he argues, the ALJ's supportability and consistency analysis as to Ms. Flores and Mr. McKenzie is not supported by substantial evidence.  (Id. at 25).  In response, the Commissioner points to "substantial evidence supporting the ALJ's finding that Ms. Flores's and [Mr.] McKenzie's assessments of 'marked' or 'extreme' mental limitations were inconsistent with the record as a whole."  (ECF No. 21 at 19–20 & nn.7–12).

The Court agrees with the Commissioner that substantial evidence supports the ALJ's finding that the opinions of Ms. Flores and Mr. McKenzie were "unpersuasive."  (R. 937).  First, contrary to Mr. Simpson's argument, the ALJ did not ignore these treating providers' observations that Mr. Simpson can be "depressed, anxious, [or] irritable[,]" (ECF No. 16-1 at 21 (citing R. 1384, 1431, 1433, 1437, 1441, 1451, 1457, 1459, 1469, 1475, 1478)),[10] but rather recognized Mr. Simpson's mental impairments as "severe" and tailored the RFC to address the limitations arising from those impairments by restricting Mr. Simpson to "simple, routine, repetitive tasks[;]" occasional interaction with coworkers, supervisors, and the public; and a low-stress job "involving only occasional decision-making, changes in the work setting, and use of judgment."  (R. 929, 932–33).

Second, the ALJ correctly concluded that the opinions of Ms. Flores and Mr. McKenzie were inconsistent with the substantial number of clinical observations that Mr. Simpson's mental impairments were milder than they assessed and managed with medication and therapy.  For

---

[10] On two of these occasions in September 2021, Mr. Simpson's anxiety was exacerbated by temporary interruptions in his medications and a delayed evaluation by a psychiatrist.  (R. 1475, 1478).  Despite these additional stressors, Mr. Simpson "was very engaged in [the] session" with his therapist, "able to reflect on his thoughts," and was "apologetic" and showed "gratitude" to his therapist for helping him.  (R. 1475; see R. 1478 (noting that Mr. Simpson was "very engaged")).

example, throughout the relevant period, treating and consultative clinicians observed Mr. Simpson with intact or only mildly impaired attention, concentration, or memory.  (R. 814, 822, 825, 829, 832, 836, 840, 844, 848, 911, 1333, 1373, 1376, 1379, 1382, 1385, 1392, 1412, 1505). He also routinely exhibited cooperative demeanor, and appropriate appearance and behavior. (R. 813–14, 820, 824, 827, 831, 835, 839, 843, 847, 910, 1319, 1322, 1373, 1376, 1379, 1382, 1385, 1390, 1396, 1411, 1505, 1533).  Mr. Simpson also regularly used appropriate speech and coherent thought processes.  (R. 813–14, 821, 824–25, 827–28, 832, 835–36, 843–44, 847–48, 857, 862, 910–11, 1373, 1376, 1382, 1385, 1390, 1396, 1411, 1505).  Finally, Ms. Flores' opinions are consistent with her own repeated observations that Mr. Simpson was "very engaged" and "receptive" to her guidance in his therapy sessions and became "less depressed" and "less anxious" as he continued therapy sessions with her and maintained a stable medication regimen. (Compare R. 1451–63 (treatment notes from inception in November 2021 through February 2022 describing Mr. Simpson as "depressed," "irritable," and "anxious") with R. 1441–49, treatment notes from March 2022 through May 2022 describing him as "less depressed," "less anxious," and "doing good on his med[ication]s")).

Third, the opinions of Mr. Rosman, Dr. Juriga, and Dr. Bhutwala, which the ALJ found more persuasive (R. 937), shared the assessment that Mr. Simpson's limitations were no more than moderate (R. 65–68, 82–85, 920–21), thus contradicting the opinions of Ms. Flores and Mr. McKenzie.  As the Second Circuit has recognized, an ALJ may "choose between properly submitted medical opinions," Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998), "including the report of a consultative physician."  Heaman v. Berryhill, 765 F. App'x 498, 500 (2d Cir. 2019) (summary order) (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)).

The ALJ correctly did so here following a comprehensive review and analysis of the record, and therefore acted within his discretion in finding unpersuasive the opinions of Ms. Flores and Mr. McKenzie.

Ultimately, Mr. Simpson's argument about the ALJ's assessment of the opinions of Ms. Flores and Mr. McKenzie is a disagreement with the ALJ's weighing of the evidence, "but the deferential standard of review prevents [the Court] from reweighing it." Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order).  Because substantial evidence supports the ALJ's assessment, the Court will not disturb it.

### iii.   Dr. Schild

The ALJ did not commit prejudicial error in omitting a discussion of Dr. Schild's March 23, 2015 statement that Mr. Simpson "clearly isn't able to maintain any kind of gainful employment" (R. 303), for two reasons.  First, this statement predated the Application Date by more than four years—well outside the relevant period of the ALJ's analysis—and was inconsistent with the extensive evidence that Mr. Simpson had measurably improved with regular therapy and consistent medication both under Dr. Schild's care (R. 285, 289), and under the care of Ms. Flores and Mr. McKenzie in more recent years.  (R. 1441–49).  Thus, in the context of the ALJ's analysis of Mr. Simpson's mental impairments, "it is evident why he rejected it." Deborah D. v. Comm'r of Soc. Sec., No. 21 Civ. 48 (FPG), 2022 WL 4922075, at *4 (W.D.N.Y. Oct. 4, 2022).

Second, the ALJ was not required to consider Dr. Schild's conclusory statement that Mr. Simpson was unable to work, without any function-by-function analysis of his limitations, because "[t]he ultimate finding of whether the claimant is disabled is reserved to the agency[.]" Schillo v. Kijakazi, 31 F.4th 64, 70 (2d Cir. 2022).  As courts in this Circuit have recognized, "an ALJ

need not—indeed, should not—accord any weight to a medical opinion couched solely in [conclusory] terms" about a claimant's ability to work.  Davis v. Kijakazi, No. 21 Civ. 8485 (VEC) (BCM), 2023 WL 5726054, at *7 (S.D.N.Y. Aug. 18, 2023), adopted by, 2023 WL 5723011 (S.D.N.Y. Sept. 5, 2023); Harrison v. Comm'r of Soc. Sec., No. 20 Civ. 5282 (BCM), 2022 WL 1289357, at *11 n.3 (S.D.N.Y. Apr. 29, 2022) ("Although the ALJ did not explicitly discuss Dr. Malouf's opinions . . . , this was, at most, harmless error, because Dr. Malouf never provided any specific function-by-function guidance" and merely "stated that plaintiff was 'unable to work at this time[.]'"); Boffoli v. Comm'r of Soc. Sec., No. 20 Civ. 5317 (SN), 2022 WL 973754, at *8 (S.D.N.Y. Mar. 31, 2022) (finding harmless "any error in failing to afford proper weight" to social worker's finding that claimant was "unable to work").

Therefore, because there was "no reasonable likelihood" that the ALJ's consideration of Dr. Schild's statement would have changed the determination that Mr. Simpson was not disabled, any procedural error from the ALJ's failure to discuss Dr. Schild's 2015 statement was harmless. Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010).

### 2. RFC

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]"  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).  When determining a claimant's RFC, "an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole."  Maya I.D.F. v. Comm'r of Soc. Sec., No. 21 Civ. 3617 (GRJ), 2022 WL 4298729, at *4 (S.D.N.Y. Sept. 19, 2022); see 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on

issues such as . . . [a claimant's] residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). "The ALJ does not need to address every piece of evidence but must provide a glimpse into their reasoning." Donald P. v. Comm'r of Soc. Sec., No. 22 Civ. 1022 (GLS) (DJS), 2023 WL 9284292, at *2 (N.D.N.Y. Dec. 20, 2023), adopted by, 2024 WL 166840 (N.D.N.Y. Jan. 16, 2024).

As noted above, the ALJ found that Mr. Simpson retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following limitations:  he cannot climb ropes, ladders, or scaffolds; he can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; he should avoid concentrated exposure to unprotected heights, hazardous machinery, extreme temperatures, and excessive vibration; he can perform simple, routine, repetitive tasks; he can occasionally interact with coworkers, supervisors, and the public; and he requires a low-stress job involving only occasional decision-making, changes in the work setting, and use of judgment required on the job.  (R. 932–33).  This RFC was consistent with the opinion of Dr. Kendrick (R. 956–61), which the ALJ found to be persuasive and supported by and consistent with the medical evidence and other medical opinions in the record.  (R. 935).

Mr. Simpson argues that the ALJ committed two errors in assessing his RFC:  (1) the ALJ failed to include in the RFC limitations for time off-task and absenteeism due to Mr. Simpson's mental and physical impairments, and (2) the ALJ's limitation of "occasional" interaction with coworkers, supervisors, and the public is not supported by substantial evidence.  (ECF No. 16-1 at 14–22, 25–31).  The Commissioner responds that the ALJ's determination of Mr. Simpson's RFC properly accounted for the limitations posed by his mental impairments, and, in any event, Mr. Simpson has not met his burden to show that he could not perform the RFC in the ALJ

Decision.  (ECF No. 21 at 23–29).  For the reasons set forth below, the Court agrees with the Commissioner that substantial evidence supports the ALJ's determination of Mr. Simpson's RFC, and he has failed to carry his burden to demonstrate that a more restrictive RFC was required.

### a.   Time off-task and absenteeism

Mr. Simpson argues that the ALJ erred in failing to include in the RFC limitations for time off-task and absenteeism because the opinions of Dr. Slowik, Dr. Belsare, Mr. Rosman, Ms. Flores, Mr. McKenzie, and Dr. Kendrick "assesse[d] a moderate or greater limitation[] to staying on task and/or maintaining attendance[,]" and that treatment records also "support[] limitations to attention, concentration, work pace, staying on task, and attendance[.]"  (ECF No. 16-1 at 15–16).  The Court disagrees.

First, while Mr. Simpson is correct that Dr. Belsare, Mr. Rosman, Ms. Flores, and Mr. McKenzie completed questionnaires indicating that Mr. Simpson would have difficulty staying on task and maintaining attendance (R. 914–15, 920–21, 1497–98, 1518–19), the ALJ adequately explained based on other evidence in the record why these providers' opinions that Mr. Simpson would be off-task or absent more than usual were not persuasive.  (R. 937–38).  In addition to the ALJ's analysis as to Ms. Flores and Mr. McKenzie discussed above (see § III.B.1.e.ii, supra), the ALJ explained that he found "no substantial support for [Mr.] Rosman's opinions regarding [Mr. Simpson's] ability to remain on task and maintain attendance" because they were "speculative" and "not supported by an explanation or any specific medical evidence."  (R. 935 (citing R. 917–22)).  The ALJ also noted that Mr. Simpson had denied fatigue or any side effects from his medication (R. 935 (citing R. 854–902, 1216–50, 1304–49, 1501–16); see R. 40 (Mr. Simpson testifying that his medications do not cause any side effects); R. 1389), and that his mental status

exams "often noted intact or only 'mildly' impaired memory, attention, and/or concentration." (R. 935; <u>see</u> R. 814, 822, 825, 829, 832, 836, 840, 844, 848, 911, 1333, 1373, 1376, 1379, 1382, 1385, 1392, 1412, 1505).[11]   The ALJ also noted that many of Mr. Simpson's daily activities— including handling money, attending meetings, and attending and performing well in full-time college classes[12]—"demonstrate[d] an ability to remain on task and maintain attendance" much greater than Dr. Belsare, Mr. Rosman, Ms. Flores, and Mr. McKenzie had posited.   (R. 935-36 (citing R. 212–21, 808–16, 1372, 1381, 1384, 1387)).   <u>See</u> <u>Imani L. v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 7744 (EAW), 2022 WL 17546509, at *6 (W.D.N.Y. Dec. 9, 2022) (finding that claimant's attendance in college courses in which she was getting A's and B's supported ALJ's RFC assessment that she could "perform[] simple routine tasks, make simple work-related decisions, maintain attention and concentration for 2-hour blocks of time and occasionally interact with supervisors, coworkers, and the general public"); <u>Fiducia v. Comm'r of Soc. Sec.</u>, No. 13 Civ. 285 (NAM), 2015 WL 4078192, at *5 (N.D.N.Y. July 2, 2015) (finding that claimant's ability to maintain above-average GPA in part-time college courses supported ALJ's RFC determination that she could perform an "unskilled job with only occasional interaction with others").   The ALJ adequately "provide[d] a logical bridge between the record and the RFC," and "no more" was required.  <u>Donald P.</u>, 2023 WL 9284292, at *3.

---

[11] Contrary to Mr. Simpson's argument, the ALJ did not err in failing to consider that Mr. Simpson's Klonopin prescription restricted him from driving for two hours afterward (ECF No. 16-1 at 22) because Mr. Simpson does not have a driver's license.  (R. 45).

[12] For example, in April 2022, Mr. Simpson reported that he was "getting all A's and doing well" in his college courses, and in July 2022, was taking a world history course for which he was doing "a lot of reading."  (R. 1372, 1381).

Second, while Mr. Simpson is also correct that, in response to his counsel's question at the Hearing, Dr. Kendrick stated that Mr. Simpson "might miss a day or so" of work due to his physical impairments (R. 960), the ALJ did not err in concluding that Dr. Kendrick's statement did not require a further limitation in the RFC.  As an initial matter, while Dr. Kendrick acknowledged the theoretical possibility that Mr. Simpson "might miss" a day of work in a month, he did not testify that Mr. Simpson actually had such a limitation.  See Russell E. v. Kijakazi, No. 22 Civ. 760 (DGL), 2023 WL 6647604, at *5 (W.D.N.Y. Oct. 12, 2023) (affirming ALJ's determination that claimant had RFC to perform work at sustained pace and maintain minimum attendance was not inconsistent with Dr. Kendrick's statement that it was "possible" claimant might be off-task for more than 15% of the workday or miss two days of work per month).  Indeed, Dr. Kendrick's acknowledgement of a possible work absence did not cause him to withdraw or modify his opinion that Mr. Simpson "be limited to only occasional rather than frequent use for the postural[,] . . . restricted in terms of his environment[,]" not "be required to work around dangerous moving machinery and other workplace hazards[,]" be limited to temperatures above freezing and below 95 degrees, and not be required to handle large vibrating equipment, all of which the ALJ incorporated in the RFC.  (Compare R. 956 with R. 932–33).  Furthermore, while Mr. Simpson bears the burden to prove that a more restrictive RFC is warranted, see Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); 42 U.S.C. § 423(d)(5), he does not point to any medical evidence or persuasive medical opinion—nor has the Court's review of the record discerned any—substantiating that he would miss one day of work per month due to his impairments.  (ECF No. 16-1 at 15).  See Garcia v. Saul, 479 F. Supp. 3d 53, 66 (S.D.N.Y. 2020) (affirming ALJ's RFC where ALJ's stress-related limitations were "supported by substantial

evidence" and claimant did not meet burden to prove a more restrictive RFC"); Lesanti v. Comm'r of Soc. Sec., 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) (affirming ALJ's RFC assessment where it was "consistent with the record and [] supported by substantial evidence" and claimant "failed to meet her burden" to "prove a more restrictive RFC").

Accordingly, the Court concludes that substantial evidence supports ALJ's conclusion that Mr. Simpson can maintain regular attendance and concentration and that no further limitation in the RFC was required.  See Barry v. Colvin, 606 F. App'x 621, 624 (2d Cir. 2015) (summary order) (affirming ALJ's decision not to include an attendance limitation in RFC where claimant's statements, treatment notes, and state agency psychologist's opinion supported conclusion that claimant had no significant limitations in performing activities within a schedule, maintaining regular attendance, or being punctual within customary tolerance); Collado v. Kijakazi, No. 20 Civ. 11112 (JLC), 2022 WL 1960612, at *10 (S.D.N.Y. June 6, 2022) (finding that ALJ's failure to address potential work absences was harmless error were substantial evidence supported ALJ's finding that claimant "can maintain regular attendance").

b.  **Occasional interaction with coworkers, supervisors, and the public**

Mr. Simpson argues that the ALJ's RFC determination that he can "occasionally interact with coworkers, supervisors, and the public" (R. 932) is ambiguous and that this conclusion is neither explained nor supported by substantial evidence.  (ECF No. 16-1 at 25–31).  These arguments lack merit.

As an initial matter, there is no ambiguity in the ALJ's RFC determination that Mr. Simpson was limited to occasional contact with coworkers, supervisors, and the public.  (R. 932, 936).  Dr. Slowik opined that Mr. Simpson had "moderate[] to marked[]" limitations in interacting

adequately with supervisors, coworkers, and the public (R. 815),[13] and Dr. Juriga and Dr. Bhutwala both opined that Mr. Simpson had only moderate limitations in this area. (R. 67–68, 84–85). The language the ALJ employed is the appropriate language to reflect these opinions about Mr. Simpson's limitations on interaction with others. See Natrella v. Comm'r of Soc. Sec., No. 19 Civ. 1237 (SDA), 2020 WL 1041067, at *6 (S.D.N.Y. Mar. 3, 2020) (finding that ALJ's limitation of claimant "to only occasional interaction with supervisors, co-workers, and the public" reflected "at least a moderate, if not greater, limitation in [her] ability to interact with others" than the "extreme limitation" offered by her counselor); Juliana Marie M. v. Comm'r of Soc. Sec., No. 18 Civ. 1421 (ATB), 2019 WL 6829044, at *13 (N.D.N.Y. Dec. 13, 2019) (finding that ALJ's limitation of claimant to "occasional contact with supervisors, co-workers, and the general public" accounted for medical opinion that claimant had "marked social limitations"); Frost v. Colvin, No. 14 Civ. 965 (MAT), 2017 WL 2618099, at *2 (W.D.N.Y. June 16, 2017) (finding that "ALJ's RFC determination limited plaintiff to only occasional interaction with the public, thereby adequately accounting for her moderate limitations in social functioning"); see also Brierly v. Saul, No. 18 Civ. 708 (CJS), 2020 WL 709609, at *5 (W.D.N.Y. Feb. 12, 2020) (noting that "courts have endorsed the [] idea that a moderate limitation on a claimant's ability to perform a certain work-related activity may be accounted for by limiting the claimant to performing that activity

---

[13] The Court notes that the Commissioner's regulations do not define "moderate," Hurley v. Colvin, No. 17 Civ. 6031 (MAT), 2018 WL 1250020, at *3 (W.D.N.Y. Mar. 12, 2018), nor did Dr. Slowik define what she meant by "marked" and "moderate." (R. 812–16). The questionnaires Dr. Belsare and Mr. Roseman completed defined "moderate" as where the claimant "is still able to function satisfactorily for certain portion[s] of the day and/or perform the tasks satisfactorily on some of the occasions" with the approximate loss of "more than 20% for the particular activity but less than 1/3 of the day[,] (33%)," defined "marked" as "a substantial loss in the ability to effectively function greater than 33%[,]" and "extreme" as "no or very little useful ability to function in this area." (R. 914, 920).

only occasionally"). Similarly, because the ALJ <u>did</u> include a social interaction limitation in the RFC, Mr. Simpson again misplaces his reliance on <u>Rucker</u> (ECF No. 16-1 at 26), where the ALJ erred in only limiting the claimant's interaction with the public—not with supervisors or coworkers—despite Dr. Juriga's conclusion that the claimant there was "moderately limited" in accepting instructions and criticism from supervisors and in getting along with co-workers. 48 F.4th at 91–92. Here, in contrast, the ALJ's inclusion in the RFC of the limitation to occasional contact with supervisors, coworkers, and others adequately addressed both Dr. Juriga's and Dr. Slowik's opinions.

Mr. Simpson's complaint that the ALJ failed to explain why he could interact with others "occasionally" similarly lacks merit. (ECF No. 16-1 at 26). As just explained, and as discussed above (<u>see</u> § III.B.1.e, <u>supra</u>), the ALJ explained at length the other evidence in the record that supported his finding more persuasive the mental assessments from Mr. Rosman, Dr. Juriga, and Dr. Bhutwala, all of whom deemed Mr. Simpson to have at most moderate limitations to interacting with others and responding to ordinary stressors in the work environment. (R. 936–37; <u>see</u> R. 67–68, 84–85). Indeed, the ALJ specifically referenced the opinions of Dr. Juriga and Dr. Bhutwala that Mr. Simpson should not work "closely with others." (R. 936 (citing R. 67–68, 84–85)). In addition, the ALJ discussed other evidence in the record that Mr. Simpson used public transportation, previously lived with a roommate, kept in touch with friends, ate out at restaurants, and at least prior to the COVID-19 pandemic had attended group meetings and anger management classes. (R. 937 (citing, <u>inter alia</u>, R. 212–21, 272, 814, 1378, 1384, 1387)). While the Court recognizes that there is some evidence that Mr. Simpson's mental conditions could worsen at times (<u>see</u>, <u>e.g.</u>, R. 1372 (Mr. Simpson reporting that he "gets sad" and "has put his

hands on people in the past"), 1389 (reporting that "once a month or every other month he gets down for no reason, [and] said he is able to work through it")), the ALJ properly accounted for these reports by limiting his RFC to "simple, routine, repetitive tasks," occasional interaction with others, and a low-stress work environment.  (R. 932–33).  See Garcia, 479 F. Supp. 3d at 64–65 (finding that ALJ adequately addressed fluctuation in mental conditions by limiting interaction with others while working).  Accordingly, the ALJ explained his reasoning as to Mr. Simpson's limited social interaction in the RFC "with sufficient specificity" to enable the Court to assess that the RFC "determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); see Hochstine v. Comm'r of Soc. Sec., No. 18 Civ. 699 (DB), 2019 WL 5448287, at *7 (W.D.N.Y. Oct. 23, 2019) (rejecting argument that ALJ failed to make "particularized findings" about claimant's ability to tolerate stress and finding that ALJ's RFC "reflect[ed] adequate consideration of Plaintiff's stress-related limitations").

Finally, to the extent that Mr. Simpson argues that the ALJ's limitation of his RFC to "occasional" interaction with coworkers, supervisors, and the public is "contrary to the medical evidence" (ECF No. 16-1 at 27), the Court finds that the record shows that the ALJ "fully evaluated the medical record and placed greater credence on objective clinical findings that were consistent with [Mr. Simpson's] own statements" regarding his improved ability to function under a stable regimen of medication, therapy, and school and family structure, which was "consistent with the ALJ's obligation to consider and resolve conflicts in the record." Donald P., 2023 WL 9284292, at *4; see Felton v. Comm'r of Soc. Sec., No. 20 Civ. 9076 (LTS) (SLC), 2023 WL 6389117, at *5 (S.D.N.Y. Sept. 30, 2023) ("The Court acknowledges that the ALJ could have reached a different conclusion on the disputed medical record, but it must defer to the ALJ's

determination when it is supported by substantial evidence—'more than a mere scintilla.'")

(quoting <u>Veino v. Barnhart</u>, 312 F.3d 578, 588–89 (2d Cir. 2002)).[14]

## IV.   **CONCLUSION**

For the reasons set forth above, Mr. Simpson's Motion is DENIED and the Commissioner's

Motion is GRANTED.  The clerk of Court is respectfully directed to close ECF Nos. 16 and 20, enter

judgment in favor of the Commissioner, and close this action.

Dated:       New York, New York
             March 26, 2024

                                    SO ORDERED.

                                    _____
                                    **SARAH L. CAVE**
                                    **United States Magistrate Judge**

---

[14] Mr. Simpson lodges two additional single-sentence arguments—that the RFC fails to consider his ability to work consistently and that the ALJ's hypothetical to the VE failed to include his inability to work consistently.  (ECF No. 16-1 at 31).  In addition to failing to cite any evidence in the record to support these conclusory arguments, they amount to a reiteration of Mr. Simpson's complaints about the ALJ's RFC determination, which, for the reasons set forth above, the Court finds to be supported by substantial evidence.  See <u>Kelly S. v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 1620 (DB), 2022 WL 2009564, at *10 (W.D.N.Y. June 6, 2022) (rejecting claimant's "argument that the step five finding did not adequately account for [one] limitation" as "merely a rehash of her challenge to the ALJ's RFC finding"); <u>Del Valle v. Berryhill</u>, No. 18 Civ. 6622 (HBP), 2019 WL 4254278, at *12 n.17 (S.D.N.Y. Sept. 9, 2019) (rejecting claimant's step five argument as "simply a rehashing of his previous challenges to the ALJ's RFC analysis").  As discussed above, the Court has concluded that the ALJ's RFC finding was not deficient and was supported by substantial evidence.